NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0573n.06

No. 08-5613

**FILED**

**Aug 31, 2010**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MITCHELL L. JACKSON,

    Plaintiff-Appellant,

        v.

RON HERRINGTON, FREDDIE ROWLAND,
ANTHONY WILLETT, PATTY MCCUISTON,
NATHAN FRANCIS,

    Defendants-Appellees.

On Appeal from the United
States District Court for the
Western District of Kentucky

/

**Before:**     **GUY, BOGGS, and SUTTON, Circuit Judges.**

**PER CURIAM.**     Plaintiff Mitchell L. Jackson, an inmate in an Indiana jail who

was temporarily incarcerated in a Kentucky detention center, brought *pro se* 42 U.S.C. §

1983 claims against Kentucky officials in connection with a strip search and a dental problem

he experienced at the detention center. Jackson appeals the district court's rulings dismissing

certain of his claims and entering summary judgment for defendants on the remainder of the

claims. Finding that dismissal of the negligence action was improper, but that defendants

were entitled to summary judgment on the balance of the claims, we affirm in part and

reverse in part.

**I.**

Jackson is an Indiana state prisoner who was temporarily incarcerated at Henderson County Detention Center (HCDC) in Kentucky during a period from mid-November 2005 until early February 2006. Upon his arrival at HCDC, Jackson was subjected to a strip search, along with the other transferred inmates. Approximately a week later, on November 24, 2005, Jackson's front tooth was knocked loose when Deputy Nathan Francis accidentally hit him in the mouth with a cell door.[1] The next month, Jackson brought claims against five employees of the HCDC under 42 U.S.C. § 1983: Deputy Nathan Francis; Jailer Ron Herrington; Chief Deputy Freddie Rowland; Sergeant Patty McCuiston; and Lieutenant Anthony Willett. Jackson's claims stemmed from the strip search and the November 2005 dental injury.

Jackson's *pro se, in forma pauperis* complaint indicated, by way of checked boxes on the form, that he was suing the five defendants in their official capacities. His complaint asserted that (1) HCDC's "rule book" violated its own grievance procedures, as well as Jackson's civil rights, because it gave no explanation of official policy or rules for searches or strip searches; (2) his strip search by Lieutenant Anthony Willett was done for the sole purpose of degrading, dehumanizing, and sexually harassing Jackson; (3) Jackson did not consent to the transfer to HCDC, and was in fact under a "court order" for Clark County

---

[1] Jackson was seen by a prison nurse on the day of the incident, and saw a dentist five days later. The dentist determined that Jackson's tooth could not be saved and that Jackson would need a partial plate. Prison medical logs indicate multiple visits by Jackson to the nurse over the next two months, during which he received ibuprofen and what appears to be a topical treatment. Those notes also indicate that Jackson stated he did not want his tooth pulled and that HCDC Jailer Herrington refused to provide Jackson with the partial plate.

(Indiana) jurisdiction; (4) his grievances were not responded to in the proper time frame; (5) Sergeant McCuiston denied him access to her superior; and (6) he was denied dental repair treatment for his tooth. He reiterated many of these claims in an attachment to the complaint, adding an assertion that he was wrongly accused of involvement in a "physical altercation" with another inmate.

Jackson's complaint was dismissed in its entirety upon the district court's initial screening of the complaint under the Prison Litigation Reform Act and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Jackson secured counsel and moved for reconsideration, requesting that the district court (1) infer his intention to sue the defendants in their individual *and* official capacities; (2) construe his statement about his tooth being knocked out as an allegation of a negligent personal injury claim; and (3) infer the claim of a blanket policy of unconstitutional searches by HCDC and, concerning his tooth, a policy of refusal to provide medical care.

The district court rejected Jackson's request to interpret his complaint as being alleged against the defendants in their individual capacities, because Jackson had clearly checked only the boxes indicating the suit was against the defendants in their official capacities. The district court thus construed the action as one brought against "the governmental entity for which [defendants] work," citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Determining that negligence suits are not authorized under 42 U.S.C. § 1983, the

court also refused to interpret the complaint to allege a negligence action against the county.[2]

With regard to the claim concerning strip-searching, however, because Jackson had included with his complaint a note written by Jailor Ron Herrington stating that "[a]ll inmates . . . coming from another prison or jail will be searched upon entry via a 'strip search,'" the district court amended its ruling to construe Jackson's complaint as alleging an unconstitutional policy. The district court did not change its ruling concerning the alleged unconstitutional denial of medical (dental) treatment.

Jackson then filed an amended complaint on January 6, 2007. The amended complaint asserted four counts, entitled: (I) Negligent Personal Injury, against the defendants in their individual capacities; (II) Neglect of Need for Treatment for Serious Personal Injury, against defendants in their official capacities; (III) Strip Search of Plaintiff, against defendants in their official capacities; and (IV) Strip Search Policy, against defendants in their official capacities.

Defendants filed a motion to dismiss Count I of the amended complaint under K.R.S. § 413.140(1)(a), Kentucky's one-year statute of limitations for personal injury actions. The district court granted this motion, finding that the claims against the defendants in their individual capacities did not relate back to the official-capacity claims in the original complaint as provided by Fed. R. Civ. P. 15(c)(3).

---

[2]Jackson did not specifically name Henderson County in either of his complaints. For that reason, although the claims against defendants in their official capacities constitute claims against the governmental unit as set forth in *Will*, we will continue to refer to "defendants" in the plural as to all of Jackson's claims.

The parties filed numerous cross-motions for summary judgment addressing Counts II-IV. The district court resolved these motions in a series of orders, concluding with its April 30, 2008 order granting defendants' motion for partial summary judgment on Count II of the amended complaint. Judgment was entered for defendants the same day. This timely appeal followed.

## II.

This court's standard of review for a district court's dismissal of a claim under Fed. R. Civ. P. 12(b)(6) is *de novo*. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). All allegations in the complaint are taken as true, and we construe the complaint liberally in favor of the non-movant. *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).

We also review the district court's entry of summary judgment *de novo*. *Moldowan v. City of Warren*, 578 F.3d 351, 373 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3504 (2010). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C)(2). We must view all of the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A.    12(b)(6) Dismissal

The district court dismissed Jackson's negligent injury claim on defendants' motion for dismissal made under Fed. R. Civ. P. 12(b)(6). While Jackson's original, *pro se*

complaint named the defendants only in their official capacities, Jackson's amended complaint asserted claims against the defendants in their individual capacities, but was filed more than one year after the incidents named in the complaint. Because the amended filing was after the applicable one-year Kentucky statute of limitations, K.R.S. § 413.140(1)(a), the district court considered Fed. R. Civ. P. 15, governing amended and supplemental pleadings, and found the claim did not relate back to the original complaint under Rule 15(c). The district court determined that the defendants, sued only in their official capacities, could not have known that they had been sued in their individual capacities for negligence within the applicable 120-day period for serving the summons and complaint. *See* FED. R. CIV. P. 15(c)(1)(C) (invoking the 120-day period for service of summons provided for in Fed. R. Civ. P. 4(m) (2006)).

In making this ruling, the district court relied in part on the case of *Lovelace v. O'Hara*, 985 F.2d 847 (6th Cir. 1993). In *Lovelace*, the plaintiff was permitted by the district court to amend her complaint, after it found that "the language of the original complaint was broad enough to give O'Hara notice that he was being sued in his individual capacity." *Id.* at 849. Determining that the officer was not timely put on notice that he was being sued in his individual capacity, we reversed that ruling, finding the amendment did not relate back to the date of the original complaint. *Id.* at 851-52.

When a plaintiff seeks to amend a complaint to allege a claim that would otherwise be barred by the statute of limitations, the amended pleading is considered to relate back to the date of the original, timely pleading when:

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

*Id.* at 849 (quoting FED. R. CIV. P. 15(c) (1991)).[3] As in *Lovelace*, the provision of the former 15(c)(3) applies to this case, as relation back is not specifically provided for in K.R.S. § 413.140, the amended complaint involves the same conduct as that set forth in the original

---

[3]After a 2007 amendment, the Rule is now numbered and worded as follows:
(c) Relation Back of Amendments.
  (1)    *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
      (A)    the law that provides the applicable statute of limitations allows relation back;
      (B)    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
      (C)    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
          (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and
          (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1).

complaint, and asserts claims against new parties—the defendants named in their individual capacities. *See Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001) (en banc). The district court considered our determination in *Lovelace*, that the defendant had not been timely put on notice of the individual capacity claims, and found that

> Like the original complaints in [the cases of *Lovelace* and *Ling v. Herrod*, 445 F. Supp.2d 892, 895 (W.D. Tenn. 2006)], the original complaint here explicitly stated that the officials were being sued only in their official capacities. Additionally, there was no other language in the complaint which should have put the Defendants on notice that they were facing individual liability for negligence related to the Plaintiff being accidentally hit by a door. Unlike the original complaint in *Moore*, the original complaint here did not reference any state law tort claim, but only a claim for inadequate medical treatment. The Defendants could not have known they were being sued individually on a negligence claim until the Amended Complaint was filed, after the applicable statute of limitations had expired, and well after the 120-period [sic] set forth in Rule 15(c)(3). The Defendants would be prejudiced if the Plaintiff were allowed to amend his complaint in this manner.[4]

(Footnote added.)

Dismissal of this claim on the basis of notice, as in *Lovelace*, was improper. We found that dismissal in *Lovelace* was required under Fed. R. Civ. P. 15(c)(3) because we were "not convinced that O'Hara had such notice of the suit during the 120 days following the filing of the original complaint that his defense will not now be prejudiced." *Lovelace*, 985 F.2d at 850.[5] In the instant case, the record reflects initial dismissal of the case on May

---

[4]The district court also considered *Ling v. Herrod*, 445 F. Supp. 2d 892, 895 (W.D. Tenn. 2006), a dismissal relying on *Lovelace*, as well as the cases of *Brown v. Shaner*, 172 F.3d 927, 933-34 (6th Cir. 1999) and *Moore v. City of Harriman*, 272 F.3d 769, 774-75 (6th Cir. 2001), where we found that the defendant officers were given notice of potential individual liability and faced no prejudice in defending on the merits.

[5]This holding is consistent with the most recent Supreme Court case to address the issue, decided after the briefing in this appeal, holding that relation back under Fed. R. Civ. P. 15(c)(1)(C) depends on whether the *added party*, not the plaintiff, "knew or should have known that it would have been named as a defendant but for an error." *Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2493 (2010). *See also*

24, 2006, pursuant to 28 U.S.C. § 1915A(b)(1), the statute that provides for screening of prisoner complaints. It was only on Jackson's motion for reconsideration that the complaint was, in part, reinstated almost seven months later on December 21, 2006. At this point, the district court ordered service of the complaint and summons on each defendant "in accordance with Rule 4 of the Federal Rules of Civil Procedure."

Rule 15, it is true, requires that defendants receive notice of the suit "within the period provided by Rule 4(m) for serving the summons and complaint," and Rule 4(m) generally requires service "within 120 days after the filing of the complaint." *See Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2493 (2010). Jackson did not file his amended complaint until January 6, 2007, over 250 days after the 120-day period expired in April 2006. But Rule 4(m) also states "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Unlike the district court, we see no reason for incorporating Rule 4(m)'s 120-day baseline into Rule 15 without also incorporating Rule 4(m)'s good-cause baseline exception. *See* FED. R. CIV. P. 15, 1991 amend. notes.

Jackson qualifies for the good-cause exception. Rule 4 requires plaintiffs to serve each defendant with a summons and a copy of the complaint. *See* FED. R. CIV. P. 4(c)(1). But district courts cannot issue summonses in *in forma pauperis* prisoner cases until after screening the complaint for frivolousness and other defects under 28 U.S.C. §§ 1915(e) and 1915A(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997), *overruled*

---

*Ritchie v. Wickstrom*, 938 F.2d 689 (6th Cir. 1991), where we confirmed that mere labels in a pleading are not the deciding factor in determining whether a defendant is sued in his "individual" or "official" capacity, found the suit was brought against the defendant officer in an individual capacity, and reversed the district court's decision to dismiss § 1983 claim on eleventh amendment grounds.

*on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The district court finished screening Jackson's complaint and issued summonses on December 21, 2006, so Jackson had "good cause" for failing to serve the defendants within 120 days of filing his complaint and complied with Rule 4(m) by serving the defendants on December 29. FED. R. CIV. P. 4(m). Because the defendants received notice of the suit "within the period provided by Rule 4(m)," Jackson satisfied Rule 15(c)(3)'s notice requirement.

**B.     Summary Judgment Rulings**

**(1)     Strip Search**

Jackson alleged that the strip search he experienced upon transfer to HCDC violated both the Fourth and Eighth Amendments of the United States Constitution. In ruling on the Eighth Amendment claim, the district court relied on our unpublished decision in *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003), and determined that because plaintiff alleged no physical injury resulting from the strip search, the claim was not cognizable under 42 U.S.C. § 1997e(e).

Section 1997e(e), a part of the Prison Litigation Reform Act, provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." In *Adams*, the plaintiff was required to undergo strip searches due to his membership in a religious group designated as a security threat under Michigan Department of Corrections policy. *See id.* at 584. We affirmed the district court's entry of summary judgment for defendant Rockafellow on the basis that the plaintiff had not claimed anything but mental or emotional injury as a result of

the searches. *See id.* at 586. Similarly, the plaintiff's claim was dismissed under § 1997e(e) in *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008), for failure to state a claim, where the plaintiff did not allege that his administrative segregation resulted in any physical injury.

Although Jackson repeatedly asserts that his larger "*action*" contains allegations of a dental injury, and implies that this meets the injury requirement, our precedent demonstrates that, absent injury related to the strip search, his Eighth Amendment claim is not cognizable under § 1997e(e).[6]

Concerning Jackson's Fourth Amendment strip-search claim, the district court properly found the search to be constitutional under *Bell v. Wolfish*, 441 U.S. 520, 558 (1979) (holding that routine strip searches of pretrial detainees and convicted prisoners, conducted after contact visits, were constitutional).[7,8] Defendants acknowledge that all inmates arriving at HCDC from Jackson's former penal institution are subjected to a strip search as a matter of course, which is not disputed by plaintiff, and plaintiff does not suggest that he was singled out in any way. Although plaintiff asserted, in a sworn grievance form, that the strip

---

[6]We decline to address Jackson's contention concerning other circuits' determinations that § 1997e(e) does not bar recovery of punitive or nominal damages. *See, e.g.*, *Calhoun v. DeTella*, 319 F.3d 936, 940-42 (7th Cir. 2003); *Hutchins v. McDaniels*, 512 F.3d 193, 196-97 (5th Cir. 2007). Even assuming § 1997e(e) does not bar his claim, it comes up short on the merits. As discussed *infra*, we reject Jackson's Fourth Amendment challenge to the strip search, and a losing Fourth Amendment claim cannot be a winner under the Eighth Amendment. The Fourth Amendment prohibits *unreasonable* conduct, whether amounting to punishment or not, while the Eighth Amendment prohibits only *cruel and unusual* conduct that rises to the level of punishment, *see Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

[7]With respect to the Fourth Amendment claim, the district court did not address § 1997e(e) in making its determination, and defendants do not invoke that provision in their argument on appeal.

[8]The district court also found persuasive our unpublished decision of *Watsy v. Ames*, No. 87-1660, 1988 WL 24978 at *3 (6th Cir. Mar. 24, 1988) (holding that policy requiring strip searches of prisoners prior to transfer did not violate Fourth Amendment).

search was "degrading," and that he "found the officers methods more of a sexual harrassment nature" [sic], he offered no further explanation via affidavit or any other means explaining any particular action taken by defendants—or particular circumstances surrounding the search—that might bolster his claim.

Although plaintiff suggests that *Masters v. Crouch*, 872 F.2d 1248 (6th Cir. 1989) supports his argument, *Masters* presented a very different scenario. In *Masters*, the plaintiff was arrested—erroneously, as it turns out—for missing a traffic court date, and was strip searched at the jail. *Id.* at 1250. We determined that the strip search of a person arrested for a traffic or other non-violent violation, where the officer(s) had no reasonable suspicion that the individual was concealing a weapon or contraband, was not reasonable under the Fourth Amendment. *Id.* at 1257.

Unlike *Masters*, and more like the instant case, we determined a strip search was reasonable in *Dobrowolskyj v. Jefferson County, Kentucky*, 823 F.2d 955, 958 (6th Cir. 1987), which we distinguished in *Masters*. In *Dobrowolskyj,* we were considering a policy providing for strip searches of newly admitted inmates "immediately prior to the movement of the inmate to rear security, female section or other areas of the Department." *Id.* at 956. That is similar to the case at bar, where we are examining a policy of strip-searching inmates who were moved from another institution.

It is clear that "particularized searches where objective circumstances indicate such searches are needed to maintain institutional security" remain permissible under *Bell*. *Masters*, 872 F.2d at 1253-54. The policy in question requires strip searches under various

circumstances, including "transport from or through an area to which the public may have access," as upon transport from one detention facility to another. Where, as here, the plaintiff has provided no evidence of any specific unreasonable action taken by defendants in the strip search context, we find this is an objective circumstance under which the institution may set security procedures including strip searches of the transferred inmates.[9]

Jackson also claims that, even if the Fourth Amendment does not prohibit strip searches upon intake as a general rule, Lieutenant Willett violated his Fourth Amendment rights by conducting the search in a "degrading" and "sexually harass[ing]" manner. That may or may not be the case, but Jackson sued the defendants in their official capacity with respect to this claim, so he must point to a policy or custom requiring or encouraging degrading or sexually harassing searches. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 43 (1995). Nothing in the record suggests such a policy or custom exists.

**(2)    Due Process Claim**

In his brief on appeal, Jackson asserts that the district court gave "short shrift" to his due process claims. He now asserts that he should not have been denied the rights accorded to other *Indiana inmates* without due process. However, an examination of Jackson's amended complaint reveals that Jackson's "due process" claim derives solely from his allegation that he was subjected to "a strip search without *due process*, and without any constitutionally sufficient procedures to protect against deprivations of the protected rights,

---

[9]Plaintiff also made a similar claim under §10 of the Kentucky Constitution, as well as a claim invoking the Interstate Corrections Compact, codified at K.R.S. § 196.610, neither of which he addresses on appeal. We consider those claims abandoned for purposes of appellate review. *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003).

liberties and interests of the plaintiff." (Emphasis added.) We have disposed of Jackson's claims concerning the strip search above, and find no independent merit in his enumerated "due process" claim.

(3)     **Eighth Amendment Dental Care Claim**

In this claim, Jackson asserts that needed medical care for his tooth was unreasonably delayed or denied altogether in violation of the Eighth Amendment. While the district court recognized that dental problems could constitute a serious medical condition, citing *Farrow v. West*, 320 F.3d 1235, 1243-44 (11th Cir. 2003) (holding 15-month delay in providing dentures to a prisoner who had only two teeth and suffered from bleeding gums and weight loss presented a jury question on deliberate indifference) and *Harrison v. Barkley*, 219 F.3d 132, 140 (2d Cir. 2000) (holding that summary judgment for defendant officials on the basis of qualified immunity was improper, given officials' indefinite refusal to treat plaintiff's cavity), the court entered judgment for defendants. In making this ruling, the court found that plaintiff had not offered evidence as to the effect of the asserted delay or as to his "serious medical need" for a partial dental plate. On appeal, Jackson asserts that he did demonstrate, with evidence, both his pain and the effect of the lack of treatment by defendants. In response, defendants assert that they were not required to provide a replacement tooth for a prisoner who came in with a pre-existing injury to that tooth and who, at worst, experienced further loosening through the incident with the door.

The Eighth Amendment requires the government to "provide medical care for those whom it is punishing by incarceration" because a failure to do so may result in death or, "[i]n

less serious cases . . . may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Making a claim of deliberate indifference under the Eighth Amendment requires that the plaintiff demonstrate both objective and subjective components. The objective component is satisfied when the evidence shows that the failure to provide medical care is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component requires demonstration of a "state of mind more blameworthy than negligence." *Id.* at 835. As we wrote in our *en banc* decision in *Williams v. Mehra*, the standard to apply is whether officials "'kn[ew] of and disregard[ed] an *excessive* risk to inmate health or safety.'" 186 F.3d 685, 691 (6th Cir. 1999) (quotation marks omitted).

In this case, although plaintiff asserts he had a serious medical need, requiring additional attention, he has presented no evidence in support of his claim. Plaintiff himself acknowledged that he first injured his tooth while incarcerated in Indiana. He offered no evidence that immediate treatment could have improved the situation, or about the particular effect of the asserted delay in treatment during his relatively brief stay in Kentucky.[10] Moreover, although he alleged that he was experiencing pain as a result of the problem, he does not appear to contend that the situation significantly changed or worsened as time went on. Jackson visited the HCDC nurse and received medication, which he does not contend failed to ameliorate the situation, at least temporarily. As defendants contend, concerning unconstitutional delays in treatment, we have held that "'[a]n inmate who complains that

---

[10]In his brief, Jackson notes that his needed dental work was performed six months later by a private dentist paid for by his family.

delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994).

When a prisoner has received some medical attention for a medical issue and the dispute centers on whether the treatment was adequate, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks and citation omitted). That proposition applies here. Although a more serious dental problem or delay, with demonstrated detrimental effects, might have changed the analysis in this case, the facts presented here do not give rise to an Eighth Amendment violation. We find no error on the part of the district court in entering summary judgment for defendants on this claim.

The district court is **AFFIRMED** in part, **REVERSED** in part, and the matter is **REMANDED** to the district court for further proceedings consistent with this opinion.